EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH G. BOORMAN;<br>and DAISY BOORMAN,<br><br>               Plaintiffs,<br>   v.<br><br>CROSSCHECK, INC.;<br>and DOES 1-5, inclusive,<br><br>               Defendants. | Civil Action No.: _____ |

## CLASS ACTION COMPLAINT

Plaintiff Joseph G. Boorman and Daisy Boorman, by and through their undersigned counsel, pleading on their own behalf and on behalf of all others similarly situated, states as follows:

### JURISDICTION AND VENUE

1.  The Plaintiffs seek redress for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.*, New York General Business Law § 349, and the Telephone Consumer Protection Act, 47 U.S.C. §227, et seq., by the Defendants.

2.  This action arises primarily out of the Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* ("FDCPA") against the Plaintiffs and class members. Pursuant to 15 U.S.C. §1692k(d), this Court has jurisdiction over actions arising out of violations of the FDCPA.

3.  Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over all other claims in this action, as all such claims arise out of the same case or controversy that is described herein.

4. Pursuant to 28 U.S.C. §1391(b), venue is proper in this District, as Defendants transact business in this District and a substantial part of the events giving rise to this claim occurred in this District.

## PARTIES

1. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

2. Plaintiffs are adult individuals residing in Brooklyn, NY, and are "consumer[s]" as the term is defined by 15 U.S.C. § 1692a(3).

3. The Plaintiffs are husband and wife, both of whom have been accused of owing a debt by the Defendants.

4. The Plaintiffs allegedly incurred a financial obligation in the approximate amount of $1,633.13 (the "Debt") to North Bay Cadillac (as an "Original Creditor") in connection with a deposit for purchase of an automobile. The alleged Debt is based on an attempted transaction between Plaintiff Joseph Boorman and the Original Creditor. This transaction was cancelled, and the Defendants have subsequently accused both Plaintiffs of owing the Debt.

5. The alleged Debt arose from services provided by the Original Creditor which were primarily for family, personal, or household purposes and which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

6. Upon information and belief, the alleged Debt was purchased, assigned, or transferred by the Original Creditor to CROSSCHECK, INC., (hereinafter "CrossCheck"), or Defendant CrossCheck was employed by the Original Creditor to collect the alleged Debt.

7. The Defendants attempted to collect the alleged Debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

8. Defendant CrossCheck is a foreign corporation based in California. Defendant CrossCheck's address, as listed with the California Secretary of State, is P.O. Box 6008, Petaluma, CA 94955-6008. Defendant CrossCheck's address for service of process, as listed with the California Secretary of State, is 1440 North McDowell Blvd., Petaluma, CA 94954.

9. Defendant CrossCheck operates as a collection agency and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

10. Defendant CrossCheck is not authorized to do business in the State of New York. As of January 28th, 2013, and as of the date of this Complaint, the New York State Department of State, Division of Corporations, contained no entry for Defendant CrossCheck.

11. Defendant CrossCheck does not have a debt collector license, as required by New York City Admin. Code §20-490.

12. DOES 1-5 (" CrossCheck Agents") are individuals employed by Defendant CrossCheck whose identities are currently unknown to the Plaintiff. One or more CrossCheck Agents may be joined as parties once their identities are disclosed through discovery.

13. At all times, Defendant CrossCheck acted by and through one or more of its Agents.

14. Causes of action alleged in this Complaint for Count I and Count II, *infra*, are brought on behalf of the Plaintiff and the members of similarly situated classes.

15. The Plaintiffs propose classes to be defined as follows:

   a. **Class A: All consumers who reside in the State of New York 1) that Defendants contacted within one year of the filing of this Complaint, 2) where such Defendants left voicemail messages that a) failed to identify the caller, b) the company calling from, or c) the purpose of the call as required by the FDCPA.**

   b. **Class B: All consumers who reside in the State of New York who were contacted by the Defendants while Defendants were not licensed or authorized to conduct business in the State of New York, and all consumers who reside in the City of New York that were contacted by Defendants while Defendants did not have a debt collector license as required by New York City Admin. Code §20-490.**

   c. **Class C: All consumers who reside in the State of New York who were contacted, within one year of the filing date of this Complaint, by a company that identified itself as "Qualia Collection Services."** Upon information, "Qualia Collection Services" is a false company name that is used by the Defendants in their efforts to collect consumer debts.

16. Pursuant to Federal Rule of Civil Procedure 23, a class is appropriate and preferable in this case because:

   a. Based on the fact that routine telephone calls, written collection statements, and general correspondence from the Defendants who

4

were not authorized to do business or collect debts are at the heart of this litigation, the class is so numerous that joinder of all members is impracticable.

b. There are questions of law and fact common to the class and these questions predominate over any questions affecting only individual class members.  The principal questions presented by this claim is whether Defendants were authorized to collect debts, and whether Defendants violated the FDCPA in its debt collection practices, namely by leaving the Plaintiffs and class members voice messages that violated the FDCPA and using a false company name to collect debts.

c. Identification of the consumers who did not received the voice messages, letters, and communications described more fully in the class definitions, *supra*, and the allegations, *infra*, is a matter that can best be determined from the Defendants' records.

d. The precise number of consumers in this class is unknown at this time and can only be discerned through discovery.  However, upon information and belief, the Defendants are hired by the creditors to collect on alleged debts regarding the accounts of hundreds or thousands consumers in the State of New York. Therefore, the members of the class are believed to be so numerous that joinder of all members is impractical.

e. The claims of the Plaintiff for this cause of action are typical of those of the class members. All are based on the same facts and legal theories.

f. The Plaintiffs will fairly and adequately represent the class members' interests. The Plaintiffs have retained counsel experienced in bringing class actions and collection abuse claims. The Plaintiffs' interests are consistent with those of the members of the class.

g. A class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically provided, at 15 U.S.C. §1692k, for the commencement of class actions as a primary means of enforcing the FDCPA.

h. Absent a class action, most members of the class would find the cost, time, and ability of engaging in protracted litigation prohibitive.

i. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the court and the litigants and promotes consistency and efficiency of adjudication.

j. Prosecution of separate actions could result in inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendants and other debt collectors.

      k. The amount of damages at issue is such that proceeding by way of a class action is the most economical and sensible manner to vindicate the injuries sustained by the Plaintiffs and class members.

## ALLEGATIONS

17. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

18. Between approximately September 28, 2012, and January, 2013, the Plaintiffs received calls from the Defendants about every day. These incessant calls have been threatening, rude, deceptive, harassing, and annoying. Upon information and belief, the Plaintiffs received more than fifty (50) calls from the Defendants.

19. Some, but not all, of the above-stated calls were received on the following dates and times:

    i. December 4, 2012 at 6:02 PM
    ii. December 8, 2012, at 10:22 PM
    iii. December 10, 2012, at 3:21 PM
    iv. December 11, 2012, at 10:30 AM
    v. December 13, 2012, at 2:37 PM
    vi. December 15, 2012, at 9:56 PM
    vii. December 17, 2012, at 2:34 PM
    viii. December 18, 2012, at 3:19 PM
    ix. December 19, 2012, at 10:20 AM
    x. December 21, 2012 at 5:37 PM

20. During the above-stated time period, Plaintiff Joseph Boorman suffered a severe stroke and was hospitalized. Due to his illness, Plaintiff Joseph Boorman has not been able to drive, work, preform household duties, or enjoy his life in the way he used to. During one of the many calls received from a CrossCheck Agent, Plaintiff Daisy

7

Boorman, Mr. Boorman's wife, pleaded with the CrossCheck Agent to stop calling because her husband had a stroke and truly needed some peace of mind to recover. The Defendants refused to stop calling and continued calling incessantly, subjecting the Plaintiffs to communications that were threatening, rude, deceptive, harassing, and annoying.

21. This first call from the Defendants was answered by Plaintiff Joseph Boorman on or about September 28, 2012. The caller, a CrossCheck Agent stated "hi, this is Jack from CrossCheck. I understand there is a problem with Cadillac." The CrossCheck agent did not state the purpose of his call.

22. In response to the above statement by the CrossCheck Agent, the Plaintiff Joseph Boorman explained that he cancelled his order with Cadillac and already surrendered a deposit for which he was not refunded. The CrossCheck Agent exclaimed "I don't care about that! I just want the $1600!" He continued "we paid out the check for the Cadillac and now you owe us! You better get to Cadillac and straighten this out or this will mess up your credit!"

23. After this initial call, the Plaintiffs began receiving incessant calls from CrossCheck Agents. Many times, the callers identified themselves by first names only, other times, the callers did not identify themselves at all.

24. The Plaintiffs received the above-stated calls on cellular phones, even though neither the Plaintiffs never provided permission to CrossCheck to contact them on their cellular phones.

25. During many of the above-stated calls, the Defendants spoke with the Plaintiff Daisy Boorman and fully disclosed information about the alleged Debt. The

8

Defendants disclosed this information after already speaking with the Plaintiff Joseph Boorman and discerning his address and telephone number.

26. In many of the calls, the Plaintiff Daisy Boorman asked the Defendants to please stop calling. During one such call, the CrossCheck Agent respondent: "You have to pay! Go to Cadillac and take care of the situation!" During this call, and many other calls, CrossCheck Agents directed accusations regarding the Debt at Plaintiff Daisy Boorman by stating remarks which included, but were not limited to, "You have to pay!"

27. Plaintiff Daisy Boorman relayed the above-stated conversation, and all prior and subsequent conversations with CrossCheck Agents, to Plaintiff Joseph Boorman.

28. During one of the many calls, the CrossCheck Agent stated to Plaintiff Daisy Boorman that "legal action would be taken" and that "your credit would be messed up!" Plaintiff Daisy Boorman relayed this communication to Plaintiff Joseph Boorman. To this date, legal action has not been taken, and there has not been any significant changes to the Plaintiff's credit score.

29. During one of the many above-stated calls, Plaintiff Daisy Boorman pleaded (as detailed also in paragraph 20) that the Defendants stop calling because her husband, Plaintiff Joseph Boorman, had been hospitalized with a stroke. To this, the CrossCheck Agent replied : "I'm doing you a favor! Go take care of the situation! You need to pay us! You need to pay us!"

30. During a call received by the Defendants in October or November, the Plaintiff Daisy Boorman again asked the CrossCheck Agent to please stop calling, indicating that she would like to find a lawyer to learn more about her rights regarding

9

this matter. In response, the CrossCheck Agent exclaimed "Tell your lawyer to call me right now! Tell your lawyer to call me right now!" Plaintiff Daisy Boorman relayed this communication to Plaintiff Joseph Boorman.

31. Between October and December, the Defendants left several identical messages for the Plaintiffs' on their voicemail. The calls were placed from telephone number 1-707-792-4396, which is a California number belonging to the Defendants. The messages all stated the following : "This is a message for Joseph or Daisy Boorman regarding North Bay Cadillac. It is very, very important that you return this phone call. Please call us back for case number 9025701."

32. The above-stated message was left in the Plaintiff's cellular voicemail on the following dates, which are not inclusive:

      i. December 15
     ii. December 17
    iii. December 18
    iv. December 21
     v. December 22

33. On January 28, 2013, the Plaintiff received a letter from "Qualia Collection Services." The letter indicates that "Qualia Collection Services" was attempting to collect a debt for its client, CrossCheck Inc. There was no mention of the Original Creditor.

34. The letter from "Qualia Collection Services" stated that a principal amount, $1,633.13, was owed, plus interest of $38.83.

35. Upon information and belief, "Qualia Collection Services" is a fake business name that is used by the Defendants to pursue consumer debts *via* a false and deceptive means.

36. There is no entity named "Qualia Collection Services" that is registered to do business in either the State of California or the State of New York.

37. There is no entity named "Qualia Collection Services" that holds a debt collector license pursuant to New York City Admin. Code §20-490.

### Plaintiffs Suffered Actual Damages

38. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

39. The Plaintiffs have suffered and continues to suffer actual damages as a result of the Defendants' unlawful conduct.

40. As a direct consequence of the Defendants' acts, practices and conduct, the Plaintiffs suffered and continues to suffer from humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment. The Defendants' continued to harass the Plaintiffs knowing that Plaintiff Joseph Boorman suffered from a stroke and was in poor health. The Defendants' incessant actions have aggravated and contributed to Plaintiff Joseph Boorman's deteriorating health condition.

41. The Defendants' conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

### COUNT I
### DEFENDANT CROSSCHECK'S VIOLATIONS OF
### THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692, et seq.

42. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

11

43. Defendants' conduct violated 15 U.S.C. §1692c(b) in that Defendants contacted and communicated detailed information to a third party about a Plaintiff's alleged Debt.

44. Defendants' conduct violated 15 U.S.C. §1692d in that Defendants engaged in conduct the natural consequence of which was to harass, oppress, and abuse the Plaintiffs and similarly situated class members.

45. Defendants' conduct violated 15 U.S.C. §1692d(5) in that Defendants caused the Plaintiffs cellular telephones to ring repeatedly and incessantly, and engaged the Plaintiffs in repeated conversations with intent to annoy, abuse, and harass the Plaintiffs.

46. Defendants' conduct violated 15 U.S.C. §1692d(6) in that Defendants placed telephone calls to the Plaintiffs similarly situated class members without any meaningful disclosure of the caller's identity and the purpose of the call.

47. Defendants' conduct violated 15 U.S.C. §1692e in that Defendants used false, deceptive, or misleading representations directed at the Plaintiffs and similarly situated class members.

48. Defendants' conduct violated 15 U.S.C. §1692e(2)(A) by misrepresenting the character, amount, and/or legal status of the alleged debt.

49. Defendants' conduct violated 15 U.S.C. §1692e(5) in that Defendants threatened to take actions that could not legally be taken, and threatened to take actions that were not intended.

50. Defendants' conduct violated 15 U.S.C. §1692e(7) in that Defendants made false representations that the Plaintiffs committed conduct in order to disgrace the Plaintiffs.

51. Defendants' conduct violated 15 U.S.C. §1692e(8) in that Defendants threatened to communicate false credit information.

52. Defendants' conduct violated 15 U.S.C. §1692e(10) in that Defendants used deceptive means to attempt to collect the alleged debt.

53. Defendants' conduct violated 15 U.S.C. §1692e(11) in that Defendants failed to make the required disclosures in its initial communication with the Plaintiffs and similarly situated class members.

54. Defendants' conduct violated 15 U.S.C. §1692e(14) in that Defendants used a company name that was not its true name to collect and alleged Debt from the Plaintiffs and similarly situated class members.

55. Defendants' conduct violated 15 U.S.C. §1692f in that Defendants engaged in activity directed at the Plaintiffs and class members the natural consequence of which was to harass and oppress the Plaintiffs.

56. Defendants' conduct violated 15 U.S.C. §1692f(1) in that Defendants attempted to collect an amount not permitted by law or the underlying agreement.

57. Defendants' conduct violated 15 U.S.C. §1692g(a)(2) in that Defendants failed to correctly state the name of the original creditor.

58. The foregoing acts and omissions of the Defendants' constitute numerous and multiple violations of the FDCPA, including every one of the above-cited provisions.

59. The Plaintiffs and class members are entitled to damages as a result of Defendants' violations.

## COUNT II
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW
## N.Y. GBS. Law §349, et seq.

60. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

61. The Plaintiffs repeat and re-alleges all allegations made under Count I, *supra*, to the extent they are applicable to New York General Business Law § 349.

62. New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service" in the State of New York.

63. By acting as a debt collector, Defendants conduct "business" or provide a "service" within the meaning of New York General Business Law § 349.

64. Defendants engaged in deceptive acts and practices in connection with the business and services it provided to the Plaintiffs and class members: 1) by operating a debt collecting business in the State of New York when Defendants are not authorized to do business in the state; 2) by attempting to collect a debt from the Plaintiff and class members without holding a debt collector license as required by New York City Admin. Code §20-490, and 3) by calling the Plaintiffs and making threatening, embarrassing, unnecessary, and oppressive remarks to the Plaintiff and third parties.

65. The aforementioned acts by the Defendants were deceptive and misleading in a material sense to the Plaintiffs and class members.

66. The aforementioned acts by the Defendants caused injury to the Plaintiffs and class members.

67. By reason of the conduct alleged above, Defendants engaged in deceptive conduct in violation of New York General Business Law § 349.

## COUNT III
## DEFENDANTS' VIOLATIONS OF
## THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227, et seq.

68. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

69. Upon information and belief, Defendants' used an automatic dialing system to place calls to the Plaintiffs. An automatic dialing system is defined in 47 U.S.C. § 227(a)(1) as equipment that has the capacity to dial and "to store or produce numbers to be called, using a random or sequential number generator."

70. Defendants' conduct violated 47 U.S.C. § 227(b)(1)(A)(iii) in that Defendants used an automatic dialing system to call Plaintiff's cellular phone without Plaintiffs' permission.

71. The foregoing act and omission of the Defendants constitute a clear and manifest violation of the TCPA.

72. The Plaintiffs are entitled to damages as a result of Defendants' violations.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that judgment be entered against the
Defendants:
1. Awarding the Plaintiffs actual damages including, but not limited to, the emotional distress the Plaintiffs have suffered and continues to

15

suffer as a result of the intentional, reckless, and/or negligent FDCPA violations pursuant to 15 U.S.C. §1692k(a)(1);

2. Awarding the Plaintiffs and class members statutory damages pursuant to 15 U.S.C. §1692k;

3. Awarding the Plaintiffs the greater of actual monetary loss or $500.00 (for each call placed in violation of the TCPA), pursuant to 47 U.S.C. §227(c)(5) against Defendants;

4. Awarding the Plaintiffs and class members actual and/or statutory damages pursuant to New York General Business Law § 349 against Defendants;

5. Awarding the Plaintiffs costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. §1692k(a)(3); and

6. Granting such other and further relief that the Court may deem just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: March 12, 2013

Respectfully submitted,

By: /s/ Hashim Rahman
    Hashim Rahman, Esq.

Rahman Legal
155 Water Street
Brooklyn, NY 11201
hrahman@rahmanlegal.com
Phone: (347) 433-6139
Fax: (347) 382-9457