UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH G. BOORMAN; and DAISY BOORMAN, <br><br>     Plaintiffs, <br><br> v. <br><br>CROSSCHECK, INC. <br><br>     Defendant. | Civil Action No.: 1:13-cv-01299-BMC <br><br>**AMENDED CLASS ACTION COMPLAINT** |

The Plaintiffs' counsel has received written consent from the opposing party to submit this Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

### AMENDED CLASS ACTION COMPLAINT

Plaintiffs Joseph G. Boorman and Daisy Boorman, by and through their undersigned counsel, pleading on their own behalf and on behalf of all others similarly situated, state as follows:

### JURISDICTION AND VENUE

1. The Plaintiffs seek redress for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.*, New York General Business Law ("NYGBL") § 349, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, et seq., by the Defendant.

2. This action arises primarily out of the Defendant's violations of the FDCPA against the Plaintiffs and class members.  Pursuant to 15 U.S.C. §1692k(d), this Court has jurisdiction over actions arising out of violations of the FDCPA.

1

3. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over all other claims in this action, as all such claims arise out of the same case or controversy that is described herein.

4. Pursuant to 28 U.S.C. §1391(b), venue is proper in this District, as Defendant transacts business in this District and a substantial part of the events giving rise to this claim occurred in this District.

## PARTIES

1. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

2. The Plaintiffs are adult individuals residing in Brooklyn, NY, and are "consumer[s]" as the term is defined by the FDCPA. *See* 15 U.S.C. § 1692a(3).

3. The Plaintiffs are husband and wife, both of whom have been accused by the Defendant of owing a debt.

4. The Plaintiffs allegedly incurred a financial obligation in the approximate amount of $1,633.13 (the "Debt") to North Bay Cadillac (hereinafter "NB Cadillac" or "Original Creditor") in connection with a deposit intended for purchase of an automobile. The alleged Debt is based on business dealings the occurred between Plaintiff Joseph Boorman and the Original Creditor. This transaction was properly cancelled, and the Defendant, by and through its agents, has subsequently accused both Plaintiffs of owing the Debt.

5. The Plaintiffs never engaged in any kind of business with the Defendant. The Plaintiffs never heard of a company called CROSSCHECK, INC. (hereinafter

"CrossCheck") prior to the time at which the Plaintiffs started receiving calls about the Debt.

6. Under the FDCPA, the term "debt" refers to "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The Plaintiffs are alleged to owe an obligation which meets the definition of a "debt" under the FDCPA.

7. Upon information and belief, the Debt was purchased, assigned, or transferred by the Original Creditor to the Defendant, or the Defendant was employed by the Original Creditor to collect the alleged Debt.

8. The Defendant, by and through its agents, attempted to collect the alleged Debt and, as such, engaged in "communications" as defined by the FDCPA. *See* 15 U.S.C. § 1692a(2).

9. Defendant CrossCheck is a foreign corporation based in California. Defendant CrossCheck's address, as listed with the California Secretary of State, is P.O. Box 6008, Petaluma, CA 94955-6008. Defendant CrossCheck's address for service of process, as listed with the California Secretary of State, is 1440 North McDowell Blvd., Petaluma, CA 94954.

10. Defendant CrossCheck is a "debt collector" as the term is defined by the FDCPA. *See* 15 U.S.C. § 1692a(6). The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.*

11. Defendant CrossCheck has disputed the issue of whether it is a "debt collector" under the FDCPA in prior federal court litigation, and this issue has been decided against the Defendant. *See Winterstein v. CrossCheck, Inc.*, 149 F.Supp.2d 466 (N.D. Ill. 2001).

12. Defendant CrossCheck's website, located at http://www.cross-check.com, states that CrossCheck is, *inter alia*, a check guarantee company. Such check guarantee companies have been deemed as debt collectors under the FDCPA. *See Id; see also, Ballard v. Equifax Check Services, Inc.*, 27 F.Supp.2d 1201 (E.D.Cal. 1998); *Holmes v. Telecredit Services Corp.,* 736 F.Supp. 1289, 1291-94 (D.Del. 1996).

13. Defendant CrossCheck is not authorized to do business in the State of New York. As of January 28th, 2013, and as of the date of this Complaint, the New York State Department of State, Division of Corporations, contained no entry for Defendant CrossCheck.

14. The Defendant does not have a debt collector license, as required by New York City Administrative Code §20-490. *See* N.Y.C. Admin. Code § 20-489. Defendant falls within the definition of "debt collection agency" as defined in N.Y.C. Admin. Code §20-489(a).

15. CrossCheck "Agents" are individuals employed by Defendant CrossCheck whose identities are currently unknown to the Plaintiff. One or more CrossCheck Agents may be joined as parties once their identities are disclosed through discovery.

16. At all times, Defendant CrossCheck acted by and through one or more of its Agents.

17. Causes of action alleged in this Complaint for Count I and Count II, *infra*, are brought on behalf of the Plaintiffs and the members of similarly situated classes. Class definitions are set forth in paragraphs 58-59 herein. Because of how numerous the alleged violations were, the Plaintiffs have proposed three issue-based classes which are defined in paragraph 58.

18. The Plaintiff also alleges facts giving rise to 1) actual damages under the FDCPA and 2) violations of the TCPA. These allegations are individual.

## ALLEGATIONS

19. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein

### Joseph Boorman's Dealings with NB Cadillac

20. On or about September 24, 2013, Plaintiff Joseph Boorman submitted a $500 deposit to NB Cadillac. The same day or one day later, Mr. Boorman expressed interest in a sun roof. NB Cadillac said this was an extra item and demanded an additional amount of $1,633.13, which was submitted *via* a check by Mr. Boorman dated September 25, 2013.

21. Based on subsequent conduct by sales agents with NB Cadillac, Mr. Boorman became wary of purchasing a vehicle with the dealership, and thereafter, expressed that he no longer wanted to purchase a vehicle from NB Cadillac.

22. Thereafter, Mr. Boorman placed a stop payment on his check for $1,633.13. This cancelled check has given rise to the Debt.

5

**Telephone Communications from Defendant CrossCheck**

23. In late September or early October, Plaintiff Joseph Boorman received a call from someone who stated the following : "hi, this is Jack from CrossCheck. I understand there is a problem with Cadillac." The CrossCheck Agent did not state the purpose of his call, and did not state the call was from a debt collector.

24. In response to the above statement by the CrossCheck Agent, the Plaintiff Joseph Boorman explained that he cancelled his order with Cadillac and already surrendered a deposit for which he was not refunded. The CrossCheck Agent exclaimed "I don't care about that! I just want the $1600!" He continued "we paid out the check for the Cadillac and now you owe us! You better get to Cadillac and straighten this out or this will mess up your credit!"

25. After this initial call, the Plaintiffs began receiving incessant calls (about every day) from CrossCheck Agents. Many times, the callers identified themselves by first names only, other times, the callers did not identify themselves at all. These calls continued until January, 2013.

26. Upon information and belief, the Plaintiffs received approximately fifty (50) calls from the Defendant.

27. The Plaintiffs received the above-stated calls on cellular phones, even though the Plaintiffs never provided permission to CrossCheck or NB Cadillac to contact them on their cellular phones. Upon information and belief, the calls were placed from an automatic dialing system.

28. Some, but not all, of the above-stated calls were received on the following dates and times:

6

      i. December 4, 2012 at 6:02 PM
     ii. December 8, 2012, at 10:22 PM
    iii. December 10, 2012, at 3:21 PM
    iv. December 11, 2012, at 10:30 AM
     v. December 13, 2012, at 2:37 PM
    vi. December 15, 2012, at 9:56 PM
   vii. December 17, 2012, at 2:34 PM
  viii. December 18, 2012, at 3:19 PM
    ix. December 19, 2012, at 10:20 AM
     x. December 21, 2012 at 5:37 PM

29. During many of the above-stated calls, Agents for the Defendant spoke with Plaintiff Daisy Boorman and fully disclosed information about the alleged Debt. The Defendant's Agents disclosed this information after already speaking with Plaintiff Joseph Boorman and discerning his address and telephone number. The Defendant also left numerous voicemail messages requesting that either Daisy or Joseph Boorman call the Defendant back.

30. After the calls from the Defendant started, Plaintiff Joseph Boorman suffered a severe stroke and was hospitalized. Due to his illness, Mr. Boorman has not been able to drive, work, preform household duties, or enjoy his life in the way he used to. During one of the many calls received from a CrossCheck Agent, Plaintiff Daisy Boorman pleaded that the Defendant stop calling because her husband had a stroke and needed some peace of mind to recover. The Defendant refused to stop calling and continued calling incessantly, subjecting the Plaintiffs to communications that were threatening, rude, deceptive, harassing, and annoying.

31. During one of the many above-stated calls in which Plaintiff Daisy Boorman asked the Defendant to stop calling, the CrossCheck Agent replied : "I'm doing you a favor!  Go take care of the situation!  You need to pay us!  You need to pay us!"

7

32. In another call received by Plaintiff Daisy Boorman, the Agent stated: "You have to pay! Go to Cadillac and take care of the situation!" During this call, and many other calls, the CrossCheck Agent directed accusations regarding the Debt at Plaintiff Daisy Boorman by stating remarks which included, but were not limited to, "You have to pay!"

33. Plaintiff Daisy Boorman relayed the above-stated conversation, and all prior and subsequent conversations with CrossCheck Agents, to Plaintiff Joseph Boorman.

34. During one of the many calls, the CrossCheck Agent stated to Plaintiff Daisy Boorman that "legal action would be taken" and that "your credit would be messed up!" Plaintiff Daisy Boorman relayed this communication to Plaintiff Joseph Boorman. To this date, legal action has not been taken, and there has not been any changes to the Plaintiffs' credit scores.

35. During a call received in October or November, Plaintiff Daisy Boorman again asked the CrossCheck Agent to please stop calling, indicating that she would like to find a lawyer to learn more about her rights regarding this matter. In response, the CrossCheck Agent became rude and hostile, exclaiming "Tell your lawyer to call me right now! Tell your lawyer to call me right now!"

**Voicemail Messages from CrossCheck**

36. Between October and December, the Defendant left several nearly identical messages for the Plaintiffs' on their voicemail. The calls were placed from telephone number 1-707-792-4396, which is a California number belonging to the Defendant.

8

37. One of the above-stated voicemail messages stated the following : "This is a message for Joseph or Daisy Boorman regarding North Bay Cadillac. It is very, very important that you return this phone call. Please call us back for case number 9025701." All other messages were nearly identical or substantially similar to this message. None of the messages contained any disclosure about the reason for the call, and none of the messages stated that the calls were from a debt collector (as required by the FDCPA).

38. The above-stated messages were left in the Plaintiffs' cellular voicemail on the following dates, which are not inclusive:

   i. December 15
   ii. December 17
   iii. December 18
   iv. December 21
   v. December 22

**Letter from Defendant CrossCheck**

39. The Plaintiffs received a letter from the Defendant which was dated October 1, 2012. The letter stated "This communication is from a debt collector."

40. The address of the Defendant as stated on the letter was as follows: "P.O. Box 6008, Petaluma, CA 94955-6008."

41. The city and 5-digit zip code on the above-stated letter are identical to the city and 5-digit zip code stated on the letter from Qualia Collection Services (as detailed *infra*). Both addresses contain P.O. boxes.

**Letter from Qualia Collection Services**

42. After the Plaintiffs consulted with the undersigned attorney, Plaintiff Daisy Boorman received another call from the Defendant where she stated that there was an attorney with whom she was speaking. Thereafter, all calls to the Plaintiffs ceased.

43. However, the Plaintiffs received a communication from "Qualia Collection Services" on January 27, 2013.

44. The letter indicates that "Qualia Collection Services" was attempting to collect a debt for its client, "CrossCheck Inc."

45. The letter from "Qualia Collection Services" stated that a principal amount, $1,633.13, was owed, plus interest of $38.83.

46. The address of "Qualia Collection Services," as stated on the letter, was as follows: "P.O. Box 4699, Petaluma, CA 94955-4699."

47. The city and 5-digit zip code on the above-stated letter are identical to the city and 5-digit zip code stated on the letter from the Defendant (as detailed *supra*). Both addresses contain P.O. boxes.

48. Upon information and belief, "Qualia Collection Services" is a fake business name that is used by the Defendant to mislead consumers.

49. There is no entity named "Qualia Collection Services" that is registered to do business in either the State of California or the State of New York.

50. There is no entity named "Qualia Collection Services" that holds a debt collector license pursuant to New York City Admin. Code §20-490.

### Plaintiffs Suffered Extensive Actual Damages

51. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

52. The Plaintiffs have suffered and continue to suffer actual damages as a result of the Defendant's unlawful conduct.

53. The Defendant's conduct was intentional or reckless.

10

54. As a direct consequence of the Defendant's acts, practices, and conduct, the Plaintiffs suffered and continue to suffer from humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment. The Defendant's continued to harass the Plaintiffs knowing that Plaintiff Joseph Boorman suffered from a stroke and was in poor health.

55. The Plaintiff Joseph Boorman has a severe heart condition. The Defendant was advised that the Plaintiff had suffered a stroke, and the Defendant continued to harass the Plaintiffs. The Defendant's incessant and improper actions have directly caused and aggravated medical symptoms associated with the Plaintiff's heart condition.

56. The Defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

57. Both Plaintiffs suffered severe emotion distress as a result of the Defendant's actions.

## CLASS ACTION DEFINITIONS AND ALLEGATIONS

58. The Plaintiffs propose classes which are defined below in **bold** text :

    a. **Class A: All consumers that 1) the Defendant contacted by telephone within one year preceding the filing of this Complaint and 2) where the Defendant failed to disclose that the communication was from a debt collector as required by FDCPA § 1692e(11).** Upon information and belief, Agents for

11

the Defendant are not trained to comply with FDCPA § 1692e(11) when making telephone communications with consumers.

b. **Class B: All consumers who resided in the City of New York that were contacted by the Defendant within one year preceding the filing of this Complaint while the Defendant did not have a debt collector license as required by N.Y.C. Admin. Code §20-490.** The Defendant's engagement of debt collection activity without a valid license violates the FDCPA § 1692e(5) and NYGBL §349.

c. **Class C: All consumers who were contacted, within one year preceding the filing date of this Complaint, by a company that identified itself as "Qualia Collection Services."** Upon information and belief, "Qualia Collection Services" is a false company name that is used by the Defendant in its efforts to collect consumer debts.

59. Pursuant to Federal Rule of Civil Procedure 23, a class is appropriate and preferable in this case because:

a. Based on the fact that scripted telephone calls and written collection statements from the Defendant are essential components of this litigation, the class is so numerous that joinder of all members is impracticable.

b. There are questions of law and fact common to the classes. The principal questions presented by the class claims are whether the

>   Defendant violated the FDCPA and NYGBL 349 in its debt collection practices by 1) failing to disclose that calls were from a debt collector, 2) attempting to collect debts in the City of New York without holding the proper license, and 3) using a false name to collect debts.
>
> c.  Identification of the consumers who received the messages, letters, and communications described more fully in the class definitions, *supra*, is a matter that can best be determined from the Defendant's records.
>
> d.  The precise number of consumers in this class is unknown at this time and can only be discerned through discovery. However, upon information and belief, the Defendant is hired by creditors to collect on alleged debts regarding the accounts of hundreds or thousands consumers. Therefore, the members of the class are believed to be so numerous that joinder of all members is impractical.
>
> e.  The claims of the Plaintiffs for these causes of action are typical of those of the defined class members. All the claims that would fall within the class definitions are based on the same facts and legal theories.
>
> f.  The Plaintiffs will fairly and adequately represent the class members' interests. The Plaintiffs have retained counsel experienced in bringing class actions and collection abuse claims.

      The Plaintiffs' interests are consistent with those of the members of the class.

g. A class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically provided, at 15 U.S.C. §1692k, for the commencement of class actions as a primary means of enforcing the FDCPA.

h. Absent a class action, most members of the class would find the cost, time, and ability of engaging in protracted litigation prohibitive.

i. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the court and the litigants and promotes consistency and efficiency of adjudication.

j. Prosecution of separate actions could result in inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendants and other debt collectors.

k. The amount of damages at issue is such that proceeding by way of a class action is the most economical and sensible manner to vindicate the injuries sustained by the Plaintiffs and class members.

## COUNT I
## DEFENDANT'S VIOLATIONS OF
## THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692, et seq.

60. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

61. Defendant's conduct violated 15 U.S.C. §1692c(b) in that Defendant contacted and communicated detailed information to a third party about a Plaintiff's alleged Debt.

62. Defendant's conduct violated 15 U.S.C. §1692d in that Defendant engaged in conduct the natural consequence of which was to harass, oppress, and abuse the Plaintiffs and similarly situated class members.

63. Defendant's conduct violated 15 U.S.C. §1692d(5) in that Defendant caused the Plaintiffs cellular telephones to ring repeatedly and incessantly, and engaged the Plaintiffs in repeated conversations with intent to annoy, abuse, and harass the Plaintiffs.

64. Defendant's conduct violated 15 U.S.C. §1692d(6) in that Defendant placed telephone calls to the Plaintiffs similarly situated class members without any meaningful disclosure of the caller's identity and the purpose of the call.

65. Defendant's conduct violated 15 U.S.C. §1692e in that Defendant used false, deceptive, or misleading representations directed at the Plaintiffs and similarly situated class members.

66. Defendant's conduct violated 15 U.S.C. §1692e(2)(A) by misrepresenting the character, amount, and/or legal status of the alleged debt.

15

67. Defendant's conduct violated 15 U.S.C. §1692e(5) in that Defendant threatened to take actions that could not legally be taken, and threatened to take actions that were not intended, against the Plaintiffs and class members.

68. Defendant's conduct violated 15 U.S.C. §1692e(7) in that Defendant made false representations that the Plaintiffs committed conduct in order to disgrace the Plaintiffs.

69. Defendant's conduct violated 15 U.S.C. §1692e(8) in that Defendant threatened to communicate false credit information.

70. Defendant's conduct violated 15 U.S.C. §1692e(10) in that Defendant used deceptive means to attempt to collect the alleged debt.

71. Defendant's conduct violated 15 U.S.C. §1692e(11) in that Defendant failed to make the required disclosures in its communications with the Plaintiffs and similarly situated class members.

72. Defendant's conduct violated 15 U.S.C. §1692e(14) in that Defendant used a company name that was not its true name to collect and alleged Debt from the Plaintiffs and similarly situated class members.

73. Defendant's conduct violated 15 U.S.C. §1692f in that Defendant engaged in activity directed at the Plaintiffs and class members the natural consequence of which was to harass and oppress the Plaintiffs.

74. Defendant's conduct violated 15 U.S.C. §1692f(1) in that Defendant attempted to collect an amount not permitted by law or the underlying agreement.

75. Defendant's conduct violated 15 U.S.C. §1692g(a)(2) in that Defendant failed to correctly state the name of the original creditor.

76. The foregoing acts and omissions of the Defendant constitute numerous and multiple violations of the FDCPA, including every one of the above-cited provisions.

77. The Plaintiffs and class members are entitled to damages as a result of Defendants' violations.

78. The Plaintiffs are entitled to actual damages.

## COUNT II
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW
## N.Y. GBS. Law §349, et seq.

79. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

80. The Plaintiffs repeat and re-alleges all allegations made under Count I, *supra*, to the extent they are applicable to New York General Business Law § 349.

81. New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service" in the State of New York.

82. By acting as a debt collector, Defendant conducts "business" or provide a "service" within the meaning of New York General Business Law § 349.

83. Defendant engaged in deceptive acts and practices in connection with the business and services it provided to the Plaintiffs and class members: 1) by attempting to collect a debt from the Plaintiff and class members without holding a debt collector license as required by New York City Admin. Code §20-490, 2) by using a false name to collect alleged debts, and 3) by calling the Plaintiffs and making threatening, embarrassing, unnecessary, and oppressive remarks to the Plaintiffs.

17

84. The aforementioned acts by the Defendant were deceptive and misleading in a material sense to the Plaintiffs and class members.

85. The aforementioned acts by the Defendant caused injury to the Plaintiffs and class members.

86. By reason of the conduct alleged above, Defendant engaged in deceptive conduct in violation of New York General Business Law § 349.

### COUNT III
### DEFENDANTS' VIOLATIONS OF
### THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227, et seq.

87. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

88. Upon information and belief, Defendant used an automatic dialing system to place calls to the Plaintiffs. An automatic dialing system is defined in 47 U.S.C. § 227(a)(1) as equipment that has the capacity to dial and "to store or produce numbers to be called, using a random or sequential number generator."

89. Defendant's conduct violated 47 U.S.C. § 227(b)(1)(A)(iii) in that Defendants used an automatic dialing system to call Plaintiff's cellular phone without Plaintiffs' permission.

90. The foregoing act and omission of the Defendants constitute a clear and manifest violation of the TCPA.

91. The Plaintiffs are entitled to damages as a result of Defendants' violations.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs pray that judgment be entered against the Defendant:

1. Awarding the Plaintiffs actual damages including, but not limited to, the emotional distress and medical damages the Plaintiffs have suffered and continue to suffer as a result of the intentional, reckless, and/or negligent FDCPA violations pursuant to 15 U.S.C. §1692k(a)(1);

2. Awarding the Plaintiffs and class members statutory damages pursuant to 15 U.S.C. §1692k;

3. Awarding the Plaintiffs the greater of actual monetary loss or $500.00 (for each call placed in violation of the TCPA), pursuant to 47 U.S.C. §227(c)(5) against Defendant;

4. Awarding the Plaintiffs and class members actual and/or statutory damages pursuant to New York General Business Law § 349 against Defendant;

5. Awarding the Plaintiffs costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. §1692k(a)(3); and

6. Granting such other and further relief that the Court may deem just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: April 28, 2013

                            Respectfully submitted,

                          By: /s/ Hashim Rahman
                              Hashim Rahman, Esq.

                              Rahman Legal
                              155 Water Street
                              Brooklyn, NY 11201
                              hrahman@rahmanlegal.com
                              Phone: (347) 433-6139
                              Fax: (347) 382-9457